UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SOPHIE TOYA, M.D.,<br><br>        Defendant. | Case: 2:20-cr-20452<br>Judge: Hood, Denise Page<br>MJ: Whalen, R. Steven<br>Filed: 09-23-2020 At 11:34 AM<br>INDI USA V. SEALED MATTER (DA)<br><br>VIO: 18 U.S.C. § 1347<br>      18 U.S.C. § 1035(a)<br>      18 U.S.C. § 2<br>      18 U.S.C. § 982 |

# INDICTMENT

**THE GRAND JURY CHARGES:**

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### The Medicare Program

1. The Medicare Program ("Medicare") was a federal health care program providing benefits to individuals who were the age of 65, or older, or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. The benefits available under Medicare were governed by federal statutes and regulations. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3. Medicare was divided into four parts which helped cover specific services: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D).

4. Specifically, Medicare Part B covered medically necessary physician office services and outpatient care, including the ordering of durable medical equipment, prosthetics, orthotics, and supplies ("DME") that were ordered by licensed medical doctors or other qualified health care providers.

5. Physicians, clinics, laboratories, and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries.

6. To receive Medicare reimbursement, providers had to fill out an application and execute a written provider agreement, known as CMS Form 855. The application contained certifications that the provider agreed to abide by the Medicare laws and regulations, and that the provider "will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and will

not submit claims with deliberate ignorance or reckless disregard of heir truth or falsity." Medicare providers were given access to Medicare manuals and service bulletins describing procedures, rules, and regulations.

7. CMS contracted with various companies to receive, adjudicate, process, and pay Part B claims, including claims for DME. Wisconsin Physicians Service was the CMS contracted carrier for Medicare Part B in the state of Michigan. AdvanceMed was the Zone Program Integrity Contractor ("ZPIC") in the state of Michigan for Medicare since May 2015. The ZPIC was the contractor charged with investigating fraud, waste and abuse.

### Durable Medical Equipment

8. Medicare covered an individual's access to DME, such as off-the-shelf ("OTS") ankle braces, knee braces, back braces, elbow braces, wrist braces, and hand braces (collectively, "braces"). OTS braces required minimal self-adjustment for appropriate use and did not require expertise in trimming, bending, molding, assembling, or customizing to fit the individual.

9. A claim for DME submitted to Medicare qualified for reimbursement only if it was medically necessary for the treatment or diagnosis of the beneficiary's illness or injury and prescribed by a licensed physician. In claims submitted to Medicare for the reimbursement of provided DME, providers were required to set forth, among other information, the beneficiary's name and unique Medicare

identification number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and provider number of the provider who prescribed or ordered the equipment. To be reimbursed from Medicare for DME, the claim had to be reasonable, medically necessary, documented, and actually provided as represented to Medicare.

10. Medicare claims were required to be properly documented in accordance with Medicare rules and regulations. For certain DME products, Medicare promulgated additional requirements that a DME order was required to meet for an order to be considered "reasonable and necessary." For example, for OTS knee braces billed to Medicare under the Healthcare Common Procedures Coding System ("HCPCS") Code L1851, an order would be deemed "not reasonable and necessary" and reimbursement would be denied unless the ordering physician documented the beneficiary's knee instability using an objective description of joint laxity determined through a physical examination of the beneficiary.

## Telemedicine

11. Telemedicine provided a means of connecting patients to doctors by using telecommunications technology to interact with a patient.

12. Telemedicine companies provided telemedicine services to individuals by hiring doctors and other health care providers. Telemedicine companies typically paid doctors a fee to conduct consultations with patients. In order to generate

revenue, telemedicine companies typically either billed insurance or received payment from patients who utilized the services of the telemedicine company.

13. Medicare Part B covered expenses for specified telemedicine services if certain requirements were met. These requirements included, but were not limited to, that (a) the beneficiary was located in a rural or health professional shortage area; (b) services were delivered via a two-way, real-time interactive audio and video telecommunications system; and (c) the beneficiary was at a practitioner's office or a specified medical facility—not at a beneficiary's home—during the telemedicine consultation with a remote practitioner.

14. Medicare regulations regarding telehealth concerned payment for telehealth consultation services only and did not prohibit ordering DME where the consultation itself was not billed to Medicare. However, some Medicare contractors took the position that the failure to comply with these requirements could inform their determination of medical necessity for DME ordered.

### The Defendant

15. The defendant, SOPHIE TOYA, a resident of Bloomfield Hills, Michigan, was a medical doctor licensed to practice medicine in Michigan, Illinois, and Indiana. SOPHIE TOYA was a Medicare provider and was required to abide by all Medicare rules and regulations. SOPHIE TOYA worked as an independent

contractor for purported telemedicine companies, including the AffordADoc Network and Integrated Support Plus, Inc., described below.

### Related Individuals and Entities

16. Creaghan Harry was a United States citizen who resided in Highland Beach, Florida, and owned and operated the AffordADoc Network.

17. Lester Stockett was a United States citizen who resided in the country of Colombia and owned and operated the AffordADoc Network.

18. Willie McNeal, IV, was a United States citizen who resided in Pasco County, Florida, and owned and operated Integrated.

19. The AffordADoc Network was a group of purported telemedicine companies owned and operated by Creaghan Harry and Lester Stockett. The AffordADoc Network included the following Delaware corporations: PCS CC, LLC ("Procall"), a call center company that purported to do business throughout Latin America, including in Colombia; Telehealth Doctor's Network, LLC (dba "Video Doctor USA"), a purported telemedicine company that did business throughout the United States; and Telemed Health Group, LLC (dba "AffordADoc"), a purported telemedicine company that did business throughout the United States.

20. Integrated was a purported telemedicine company owned and operated by Willie McNeal, IV, with its principal office in Hernando County, Florida, that did business throughout the United States.

# COUNT 1
## Health Care Fraud
### (18 U.S.C. §§ 1347 and 2)

21. Paragraphs 1 through 20 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

22. From in or around October 2018 through on or about April 9, 2019, in the Eastern District of Michigan and elsewhere, the defendant, SOPHIE TOYA, did knowingly and willfully execute a scheme and artifice to defraud a health care benefit program, as that term is defined under Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicare, in connection with the delivery of and payment for health care benefits, items, and services, contrary to Title 18, United States Code, Section 1347.

### Purpose of the Scheme and Artifice

23. It was a purpose of the scheme and artifice for defendant SOPHIE TOYA and her accomplices to unlawfully enrich themselves by, among other things, (a) submitting and causing the submission of false and fraudulent claims to Medicare for DME products that were (i) procured through the payment of kickbacks and bribes, (ii) medically unnecessary, (iii) not eligible for Medicare reimbursement, and

7

(iv) not provided as represented; (b) concealing the submission of false and fraudulent claims and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for their personal use and benefit.

### Manner and Means of the Scheme

24. The manner and means by which defendant SOPHIE TOYA and her accomplices sought to accomplish the purpose of the scheme included, among other things, the following:

25. On or about January 3, 2015, SOPHIE TOYA certified to Medicare that she would comply with all Medicare rules and regulations, including that she would not knowingly present or cause to be presented a false and fraudulent claim for payment by Medicare. Despite this certification, SOPHIE TOYA proceeded to present and cause to be presented false and fraudulent claims for payment by Medicare as described below.

26. SOPHIE TOYA agreed with others at the AffordADoc Network and Integrated to write brace orders for Medicare beneficiaries in exchange for approximately $25 or $30 per patient consultation and to provide few, if any, medical treatment options for patients besides braces during the purported telemedicine consultations.

27. SOPHIE TOYA gained access to Medicare beneficiary information for thousands of Medicare beneficiaries from the AffordADoc Network, Integrated, and

other purported telemedicine companies in order for SOPHIE TOYA to sign brace orders for those beneficiaries.

28.   Neither SOPHIE TOYA, nor the AffordADoc Network, nor Integrated billed Medicare for telemedicine consultations with beneficiaries. Instead, the AffordADoc Network, Integrated, and others solicited illegal kickbacks and bribes from brace suppliers in exchange for brace orders that were signed by SOPHIE TOYA and others.

29.   Brace orders issued by SOPHIE TOYA at the direction of the AffordADoc Network and Integrated were forwarded to brace suppliers for fulfillment. The brace suppliers submitted and caused the submission of claims to Medicare based on the orders signed by SOPHIE TOYA.

30.   Owners and operators of the AffordADoc Network and Integrated paid and caused payments to be made to SOPHIE TOYA and others to sign brace orders and cause the submission of claims for braces that were medically unnecessary and not eligible for reimbursement from Medicare, in order to increase revenue for themselves and their co-conspirators.

31.   SOPHIE TOYA ordered braces that were medically unnecessary, for patients with whom she lacked a pre-existing doctor-patient relationship, without a physical examination, and frequently based solely on a short telephonic conversation with the beneficiary or without any conversation with the beneficiary at all.

32. SOPHIE TOYA and others falsified, fabricated, altered, and caused the falsification, fabrication, and alteration of patient files, brace orders, and other records, all to support claims to Medicare for braces that were obtained through illegal kickbacks and bribes, medically unnecessary, ineligible for Medicare reimbursement, and not provided as represented.

33. SOPHIE TOYA and others concealed and disguised the scheme by preparing and causing to be prepared false and fraudulent documentation, and submitting and causing the submission of false and fraudulent documentation to Medicare, including documentation in patient files and brace orders in which (a) SOPHIE TOYA falsely stated that she determined through her interaction with the Medicare beneficiary that a particular course of treatment, including the prescription of braces, was reasonable and medically necessary; (b) SOPHIE TOYA falsely stated that she provided the Medicare beneficiary with information regarding follow-up medical treatment; (c) SOPHIE TOYA falsely stated that she counseled the Medicare beneficiary to consult with a pain management physician; (d) SOPHIE TOYA falsely attested that the information in the medical record was true, accurate, and complete; (e) SOPHIE TOYA falsely diagnosed the Medicare beneficiary with certain conditions to support the prescription of certain braces; (f) SOPHIE TOYA concealed the fact that her interaction with the Medicare beneficiary was brief and

telephonic; and (g) SOPHIE TOYA falsely represented that she had performed certain diagnostic tests prior to ordering braces.

34. SOPHIE TOYA and others submitted and caused the submission of false and fraudulent claims to Medicare in excess of approximately $6.3 million for braces that were procured through the payment of kickbacks and bribes, medically unnecessary, ineligible for Medicare reimbursement, and not provided as represented, for which Medicare paid approximately $3.5 million.

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS 2–6
### False Statements Relating to Health Care Matters
### (18 U.S.C. §§ 1035(a) and 2)

35. The allegations set forth in paragraphs 1 through 20 of this Indictment are realleged and incorporated as if fully set forth in this paragraph.

36. On or about the dates set forth below, within the Eastern District of Michigan and elsewhere, defendant SOPHIE TOYA, in a matter involving a health care benefit program, specifically Medicare, did knowingly and willfully (a) falsify, conceal, and cover up by trick, scheme, and device material facts, and (b) make materially false, fictitious, and fraudulent statements and representations, and make and use materially false writings and documents, knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in connection with the delivery of and payment for health care benefits, items, and services, in that

defendant SOPHIE TOYA prepared and signed medical records and brace orders in which (a) SOPHIE TOYA falsely stated that she determined through her interaction with the Medicare beneficiary that a particular course of treatment, including the prescription of braces, was reasonable and medically necessary; (b) SOPHIE TOYA falsely stated that she provided the Medicare beneficiary with information regarding follow-up medical treatment; (c) SOPHIE TOYA falsely stated that she counseled the Medicare beneficiary to consult with a pain management physician; (d) SOPHIE TOYA falsely attested that the information in the medical record was true, accurate, and complete; (e) SOPHIE TOYA falsely diagnosed the Medicare beneficiary with certain conditions to support the prescription of certain braces; and (f) SOPHIE TOYA concealed the fact that her interaction with the Medicare beneficiary was brief and telephonic.

| Count | Approx. Date | Medicare Beneficiary | Record Containing False Statements and Concealment of Material Facts |
|---|---|---|---|
| 2 | March 12, 2019 | T.F. | Medical records and detailed written orders for knee brace, back brace, and shoulder brace |
| 3 | March 15, 2019 | G.P. | Medical records and detailed written orders for knee brace, back brace, and shoulder brace |
| 4 | March 20, 2019 | K.C. | Medical records and detailed written orders for knee brace, back brace, and shoulder brace |
| 5 | March 24, 2019 | P.C. | Medical records and detailed written orders for knee brace, back brace, wrist brace, and shoulder brace |
| 6 | March 27, 2019 | P.R. | Medical records and detailed written orders for knee brace, back brace, and shoulder brace |

All in violation of Title 18, United States Code, Sections 1035(a) and 2.

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 982(a)(7))

35. The allegations contained in this Indictment above are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 982.

36. As a result of the violations alleged in Counts 1 through 6 under Title 18, United States Code, Sections 1347, 1035(a), and 2, as set forth in this Indictment, defendant SOPHIE TOYA shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes

or is derive, directly or indirectly, from gross proceeds traceable to the commission of the offense.

37. Substitute Assets: If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

a. Cannot be located upon the exercise of due diligence;

b. Has been transferred or sold to, or deposited with, a third party;

c. Has been placed beyond the jurisdiction of the Court;

d. Has been substantially diminished in value; or

e. Has been commingled with other property that cannot be subdivided without difficulty;

It is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b), to seek to forfeit any other property of defendant SOPHIE TOYA up to the value of the forfeitable property described above.

38. Money Judgment: The government shall also seek a forfeiture money judgment from the defendant for a sum of money representing the total amount of proceeds obtained as a result of defendant's violations of 18 U.S.C. § 1347, as alleged in this Indictment.

THIS IS A TRUE BILL.

*s/Grand Jury Foreperson*
_____
Grand Jury Foreperson

MATTHEW SCHNEIDER
UNITED STATES ATTORNEY

REGINA McCULLOUGH
Chief, Health Care Fraud Unit

DANIEL KAHN
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice

JACOB FOSTER
Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice

*s/Rebecca Yuan*
_____
REBECCA YUAN
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Ave., N.W.
Washington, D.C. 20005
Phone: (202) 262-3520
Email: rebecca.yuan@usdoj.gov

Date: September 23, 2020

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover** | Case: 2:20-cr-20452<br>Judge: Hood, Denise Page<br>MJ: Whalen, R. Steven<br>Filed: 09-23-2020 At 11:34 AM<br>INDI USA V. SEALED MATTER (DA) |

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to comp

### Companion Case Information

| | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes   ☒ No | AUSA's Initials: PJ⊃ |

**Case Title:** USA v. SOPHIE TOYA

**County where offense occurred:** Wayne

**Check One:**   ☒ Felony   ☐ Misdemeanor   ☐ Petty

 ✓  Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [Case number:                    ]
____Indictment/____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

### Superseding Case Information

**Superseding to Case No:** _____   **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| | | |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

September 23, 2020
       Date

Rebecca Yuan, Trial Attorney
211 West Fort Street, Detroit, MI 48226
Phone: (202) 262-3520
Fax:    (313) 226-0816
E-Mail address: Rebecca.Yuan@usdoj.gov
Attorney Bar #: NY 5346861

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.