## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                       Case No. 20-20452

v.                                      Hon. Denise Page Hood

SOPHIE TOYA,

       Defendant.

_____/

## ORDER DENYING IN PART THE GOVERNMENT'S MOTION TO EXCLUDE CERTAIN EVIDENCE AND ARGUMENT RELATING TO "OPERATION BRACE YOURSELF" and GRANTING IN PART AS AGREED TO BY THE DEFENSE (ECF No. 55)

## I.     BACKGROUND

This matter is before the Court on the Government's Motion to Exclude Certain Evidence and Argument Relating to "Operation Brace Yourself."   A response and reply have been filed.   Arguments were made and the Court briefly ruled on the record at trial.   Below sets forth more fully the Court's reasoning.

The motion, filed on May 3, 2024, was filed in response to Defendant Sophie Toya's request at trial on May 2, 2024, that a Federal Bureau of Investigation agent with knowledge of the investigation named "Operation Brace Yourself" testify at trial.   The motion is also a response to the Court's request to determine whether there is an agent who has knowledge of the full scope of the investigation and/or whether Jacob Foster from the Department of Justice D.C.

office knows anyone who has knowledge of the full scope of the involvement of this activity.

Toya argued at trial, and the Government confirmed, that the current case agent scheduled to testify at trial became involved ***after*** Toya was indicted and is to testify as to certain evidence gathered against Toya. The Government asserted that the current case agent is ***not*** prepared to testify as to evidence gathered against other individuals in other cases brought by other offices in other districts. The Government noted that if Toya wants to put on additional evidence in her case, she is welcome to do so.

On May 3, 2024, after the Court's receipt of the Government's current motion to exclude, the Court indicated that it may have a different opinion of Dr. Randy Swackhammer's testimony who was scheduled to testify that day. Dr. Swackhammer was also a medical provider, who entered a plea agreement with the Government, who is to testify as to how the process worked. The Court noted that Dr. Swackhammer was identified by the Government in its motion as part of the Operation Brace Yourself investigation. The Court stated that because the Government's instant motion seeks to exclude any evidence or argument as to Operation Brace Yourself Dr. Swackhammer could not testify until Toya had the opportunity to respond to and the Court ruled on the Government's current motion.

2

The Court noted that the current motion could bear on whether Dr. Swackhammer's testimony is more prejudicial than probative.

On September 23, 2020, an Indictment was filed charging Toya with: Count 1, Health Care Fraud, 18 U.S.C. §§ 1347 and 2; Counts 2-6, False Statements Relating to Health Care Matters, 18 U.S.C. §§ 1035(a) and 2); and Forfeiture Allegations, 18 U.S.C. § 982(a)(7). (ECF No. 1) Toya was a medical doctor licensed to practice in Michigan, Illinois and Indiana. She was a Medicare provider and worked as an independent contractor for telemedicine companies, including the AffordADoc Network and Integrated Support Plus, Inc. (ECF No. 1, PageID.5-.6) Toya is alleged to have defrauded Medicare by signing orders for orthotics prescriptions with two telemedicine companies, AffordADoc Network and Integrated Support Plus, Inc., without examining the patients. *Id.* at PageID.5-.6. AffordADoc was owned and operated by Creaghan Harry and Lester Stockett. *Id.* at PageID.6. Integrated was owned and operated by Willie McNeal, IV. *Id.*

The alleged purpose of the scheme and artifice for Toya and her ***accomplices*** was to unlawfully enrich themselves by submitting and causing the submission of false and fraudulent claims to Medicare for DME products that were procured through the payment of kickbacks and bribes, medically unnecessary, not

3

eligible for Medicare reimbursement, concealing the submission of false and fraudulent claims and the receipt and transfer of the proceeds from the fraud, and diverting proceeds of the fraud for their personal use and benefit. *Id*. at PageID.7.

Toya is alleged to have agreed with others at AffordADoc Network and Integrated to write brace orders for Medicare beneficiaries in exchange for approximately $25 or $30 per patient consultation. *Id*. at PageID.8. Toya is further alleged to gain access to Medicare beneficiary information for thousands of Medicare beneficiaries from the AffordADoc, Integrated and other purported telemedicine companies in order for Toya to sign brace orders for those beneficiaries. *Id*. at PageID.9. Toya did not bill Medicare for telemedicine consultations with the beneficiaries. Instead, AffordADoc, Integrated and others solicited illegal kickbacks and bribes from brace suppliers in exchange for brace orders that were signed by Toya and others. *Id*. Brace orders issued by Toya at the direction of AffordADoc and Integrated were forwarded to brace suppliers for fulfillment. *Id*. The brace suppliers submitted and caused the submission of claims to Medicare based on the orders signed by Toya. *Id*.

In its motion, the Government states that "Operation Brace Yourself" occurred on April 9, 2019, and was not the operation that Toya was arrested in, which the Government claims was instead "Operation Rubber Stamp" on

September 30, 2020.   The FBI used the name Operation Brace Yourself to refer to arrests, searches, seizures and the unsealing of charges against 24 defendants on April 9, 2019.   The Government asserts that these individuals were largely owners and operators of fraudulent durable medical equipment ("DME") companies, call centers, and telemedicine companies.   Herb Kimble was charged in Operation Brace Yourself.   The 24 defendants were prosecuted separately by the Fraud Section of the Department of Justice, and others by the U.S. Attorneys' Offices in South Carolina and New Jersey.   Dr. Swackhammer, who is set to testify in the current trial before the Court, was charged in Operation Brace Yourself.

The Government claims that Kimble had "almost" nothing to do with the investigation of Toya.   Kimble provided no information to law enforcement as to Toya.   Kimble's cooperation involved conducting recordings of his conversations with DME and telemedicine company owners about a kickback scheme.   Though his call centers, Kimble obtained patients and paid kickbacks to telemedicine company owners to obtain DME orders for these patients, which Kimble sold in exchange for kickbacks he received from DME owners.   The Government asserts Kimble did not directly interact with doctors and did not pay kickbacks to doctors.

The Government states that Kimble made recordings of conversations with owners of two telemedicine companies that paid Toya to sign the DME orders.

5

Kimble did not make recordings of conversations with Toya.   On April 19, 2019, Harry, Stockett, Loewenstern and McNeal were arrested in Operation Brace Yourself and they stopped paying Toya and other doctors.

Law enforcement opened an investigation on Toya three months after the arrests of the telemedicine companies and was charged in an undercover operation that culminated in September 2020 law enforcement action named "Operation Rubber Stamp."   The Government claims that unlike the recordings made by Kimble in Operation Brace Yourself which focused on a kickback scheme, the recordings in Operation Rubber Stamp focused on health care fraud committed by doctors who signed false and fraudulent orders for medically unnecessary braces. The undercover operation took place in approximately March and early April 2019 when undercover agents posed as Medicare beneficiaries and called a DME call center operated by Kimble.   The Government asserts that the Government produced a wide swath of discovery related to Kimble and his co-conspirators to Toya in an abundance of caution since the Operation Rubber Stamp undercover calls initially were made to Kimble's call center, which were being transferred to telemedicine companies, and the brace prescriptions signed by Toya were ultimately filled by at least some DME companies that paid kickbacks to Kimble.

## II.    ANALYSIS

### A.    Parties' Arguments

The Government seeks to exclude (1) any irrelevant testimony, questions, or arguments about Operation Brace Yourself; (2) any evidence or argument inviting the jury draw a negative inference from the Government's decision not to call a witness to testify about Operation Brace Yourself; and (3) any suggestion or argument that the Government's decision to pursue and undercover operation during the time Toya was committing her crimes was somehow unlawful or improper.

In response, as to the Government's first request, Toya is not sure what the Government means when it seeks to exclude "any irrelevant testimony, questions or argument about Operation Brace Yourself."   If the Government seeks to exclude "all" testimony or arguments about Operation Brace Yourself, Toya argues that not "all" testimony is irrelevant to Toya's case.   Toya asserts that the plea deal with Kimble or the length of time it took for the scheme to be shut down will not be raised in front of the jury.   As to the second request, Toya does not intend to present evidence or argument inviting the jury to draw a negative inference from the Government's decision not to call a witness to testify about Operation Brace Yourself. Regarding the third request, Toya does not intend to suggest or argue that

the Government's decision to investigate the scheme using undercover operatives was unlawful or improper.

Toya instead seeks testimony from an agent who can testify "briefly" to the breadth of Kimble's scheme and basic facts about it which none of the agents who have testified were able to so testify.   Specifically, Toya seeks testimony about the fact that her alleged telemedicine "accomplices" were in on the scheme, that they sold her prescriptions to Kimble, and that Kimble then sold the prescriptions to DME companies, and that the DME companies are the ones who billed Medicare. Toya asserts that this concerted action at the top of the scheme, compared to the lack of concerted action among doctors like Toya and Dr. Swackhammer, is relevant as to whether Toya was a knowing and willful participant in the scheme. Toya claims since the Government has now decided not to call McNeal in its case in chief, this makes testimony from an agent who can speak to the broad scheme even more compelling and necessary, especially if the Court allows Dr. Swackhammer to testify.

Toya suggests Special Agent Karen Corbett, an "Unidentified Agent" who appeared at Dr. Swackhammer's sentencing, or any of the 48 agents whose names appear as attendees on reports of interviews with Kimble during his extensive cooperation with the Government.   Toya claims the Government, in the interest of

justice, owes Toya an opportunity to speak to one of these agents who has the background on the scheme.

In reply, the Government argues that Toya did not follow the established process for producing federal agents with particularized knowledge to testify on behalf of the defense as required in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). The Government claims that at this late hour and having done nothing to obtain a witness she now claims is part of her defense, Toya cannot reasonably claim that it is the Government's responsibility to produce a witness for her since she had the power and time to secure such a witness and chose not to do so. The Government further claims that the testimony Toya seeks, the concerted action at the top of the scheme, even if relevant, its probative value is outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time under Rule 403 of the Rules of Evidence. The Government argues that allowing questions to a federal agent about investigations of subjects other than Toya runs the risk of confusing the issues and wasting the jury's time in a single defendant on trial for her actions, conduct and fraud scheme. At worst, the Government argues, such testimony would unfairly prejudice the Government because it could lead the jury to believe that Toya is not guilty because "other people are more guilty," which the Government claims is improper.

### B.    *Touhy* Hearing

In *United States ex rel Touhy v. Ragan,* 340 U.S. 462 (1951), the Supreme Court upheld a Department of Justice ("DOJ") regulation prohibiting its employees from responding to a subpoena absent permission from superiors.  *"Touhy* is part of an unbroken line of authority which directly supports [the] contention that a federal employee may not be compelled to obey a subpoena contrary to his federal employer's instructions under valid agency regulations." *Boron Oil Company v. Downie,* 873 F.2d 67, 69 (4th Cir.1989). The DOJ regulations pertinent to this case are found at 28 C.F.R. §§ 16.21–29.   *United States v. Ewing*, No. 11-20178, 2014 WL 29118, at *2–3 (E.D. Mich. Jan. 3, 2014).   "[I]f Defendant is dissatisfied with the DEA's response to his *Touhy* request, his remedy is an action against the DEA pursuant to the Administrative Procedures Act, and not pursuant to a motion to compel.") *United States. v. Threet,* 2011 WL 5865076, *1–2 (E.D. Mich.2011) (citations omitted).

Here, Toya does not dispute that she did not issue a subpoena for any federal agent to produce any documents or testimony prior to the trial in this case.   Toya is making the argument that in the interest of justice, the Government provide an agent to testify as to the breadth of Kimble's scheme and basic facts about the scheme.

10

C.    **Sixth Amendment**

The Sixth Amendment guarantees every criminal defendant "the right ... to have compulsory process for obtaining witnesses in his favor."   The Supreme Court of the United States has indicated that "at a minimum," "criminal defendants have ... the right to put before a jury evidence that might influence the determination of guilt." *Taylor v. Illinois,* 484 U.S. 400, 407–408 (1988). This right to compulsory process exists only where a defendant "make[s] some plausible showing of how [the desired witness'] testimony would have been both material and favorable to his defense."   *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867 (1982).   The Confrontation Clause provides the right to face one's accusers and to conduct cross-examination. *Delaware v. Fensterer,* 474 U.S. 15, 18–19. The Sixth Amendment's Compulsory Process Clause allows criminal defendants the right to government assistance to compel the attendance of favorable witnesses at trial and to put before the jury evidence that might influence the determination of guilt. *Cool v. United States,* 409 U.S. 100 (1972). In *Valenzuela–Bernal,* the Court specifically noted that the right to compulsory process does not guarantee a criminal defendant the right to compel the attendance and testimony of any and all witnesses. *Id.; Waller v. United States*, No. 108CV936, 2010 WL 750219, at *22 (N.D. Ohio Feb. 26, 2010).   "If the evidence upon which a defendant is convicted

11

was secured personally by government agents who testified, the government is not required to produce the cooperating individual." *United States v. Moore,* 954 F.2d 379, 381 (6th Cir.1992); *see also Pennsylvania v. Ritchie,* 480 U.S. 39, 56 (1987) (court never held that compulsory process clause guarantees right to discover identity of witnesses).

To prove a violation of § 1347, the government is required to prove that Toya "(1) knowingly devised a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services; (2) executed or attempted to execute this scheme or artifice to defraud; and (3) acted with intent to defraud." *United States v. Anderson*, 67 F.4th 755, 770 (6th Cir. 2023); *United States v. Semrau*, 693 F.3d 510, 524 (6th Cir. 2012) (quoting *United States v. Martinez*, 588 F.3d 301, 314 (6th Cir. 2009)).

The Sixth Circuit Pattern Instructions define a "scheme to defraud" to include "any plan or course of action by which someone intends to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises." Pattern Crim. Jury Instr. 6th Cir. § 10.05 (2021 ed.).

The Indictment alleges that the "purpose of the scheme and artifice" was for Toya and her ***accomplices*** to unlawfully enrich themselves by submitting and causing the submission of false and fraudulent claims to Medicare for DME

products.   Kimble is not named in the Indictment, nor is his telemarketing/call center entity mentioned in the Indictment.   However, the evidence before the Jury is that patients/beneficiaries saw the advertisements on television about the braces and they called the number on advertisement which was to a call center owned and operated by Kimble.   Kimble, telemedicine and DME companies were involved in Operation Brace Yourself which was a scheme which involved "kickbacks" as opposed to Operation Rubber Stamp (which Toya did not know was a named separate investigation by the Government) which involved the doctors who allegedly signed the orders for medically unnecessary braces.

The evidence before the Jury is that the call center took the calls from the patients/beneficiaries and the call center operators were the ones who obtained the Medicare information from the patients/beneficiaries and were the ones who identified the braces the patients/beneficiaries ordered.   Apart from the advertisements, the call center operators were the ones that began the process of the alleged scheme to defraud by obtaining all the Medicare information from and the types of braces required by the patients/beneficiaries who called.   It appears then that the call center or the owner, Kimble, is an accomplice of Toya, as alleged in the Indictment.   The Jury does not have such knowledge, however.   There is no witness presented by the Government that Toya can confront or cross-examine as

to the fraudulent "scheme" alleged in the Indictment or how the call center came into being.

The Government argues that the factual issues before the Jury only involve Toya's own actions or "scheme" to defraud Medicare by signing the orders for medically unnecessary braces.   However, the evidence presented by the Government shows that there is more than Toya's actions that constitute the "scheme" in this matter.   There is much evidence that the call center was involved, in addition to the DME companies, even before the patient/beneficiaries got to Toya for her final approval of the orders.   Although the Government claims Toya was part of Operation Rubber Stamp and not Operation Brace Yourself, the only witness the Government is presenting to get an "overall" picture of the "scheme" is Dr. Swackhammer, who is essentially in the same position as Toya as a medical provider.   Dr. Swackhammer was charged as a result of the Operation Brace Yourself, not Operation Rubber Stamp, like Toya.   This alone shows that there is a connection between Operation Brace Yourself and Operation Rubber Stamp, even though the DOJ, other United States Attorneys' offices, and different FBI agents were involved in the investigation and the prosecution of the charges.

Would there have been an Operation Rubber Stamp, but for the evidence from Operation Brace Yourself?   Toya is entitled to test the connection and to

cross examine an agent who may have been involved in the investigation of both Operations. The Court finds that testimony as to the "basic facts" of Operation Brace Yourself is relevant as to the scheme Toya is accused of in this Indictment. The Indictment alleges Toya had "accomplices" and much of the evidence before the Jury is that the call center was involved whose operators obtained all the Medicare information and the types of braces the patients/beneficiaries ordered. However, there is no evidence before the Jury as to who directed the call center operators to obtain such information. The Government is to produce a witness who has knowledge as to the basic facts of Operation Brace Yourself and to Kimble's role so that Toya can confront her accusers as to the facts alleged in the Indictment as guaranteed by the Sixth Amendment.

### D.    Dr. Swackhammer's Testimony

The Court ruled that certain medical providers' testimonies are relevant to Toya's knowledge of the fraudulent scheme, including Dr. Swackhammer's testimony. Because there is no other testimony as to how Dr. Swackhammer (and the call centers and DME companies) became involved in the same fraud as Toya, based on the evidence before the Jury and the procedural facts stated by the Government in its motion, the interest of justice requires that Toya be able to confront a witness who has knowledge of the overall scheme. Toya only seeks

one agent to testify and has so listed certain names in her motion.

The Court notes that although evidence may be relevant, Rule 403 states that evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403. Now that the Court is better aware of the Government's evidence presented at trial, the Court finds that Dr. Swackhammer's testimony be excluded because its probative value is substantially outweighed by the danger of unfair prejudice and could misled the jury in that the "scheme" before the Jury only involved Toya's own "scheme." Dr. Swackhammer's testimony as to the "scheme" and how Toya may have been exposed to the same source of fraud, without a background on Dr. Swackhammer's role in the "scheme" under the Operation Brace Yourself umbrella, is now tipped to the danger of unfair prejudice or misleading the jury side of the Rule 403 analysis. Toya should be allowed to confront a witness who has knowledge of the overall scheme in Operation Brace Yourself.

## III.    CONCLUSION/ORDER

Recognizing that the *Touhy* process has not been met, but finding that the interest of justice and fairness so requires, for the reasons set forth above,

IT IS ORDERED that the Government's Motion to Exclude Certain Evidence and Argument as to Operation Brace Yourself (ECF No. 55) is DENIED in part and GRANTED in part per the agreement by the defense, as more fully set forth above.

IT IS FURTHER ORDERED that the Government produce a witness at trial who has knowledge of the basic facts of Operation Brace Yourself and Mr. Kimble's involvement therein.

IT IS FURTHER ORDERED that Dr. Randy Swackhammer be excluded from testifying at trial until the Government identifies and produces the witness stated above.

s/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

DATED:   May 10, 2024