## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA

         Plaintiff,

v.
                                      Case No. 20-CR-20452
                                     Honorable Denise Page Hood

SOPHIE TOYA,

         Defendant.

_____/

## ORDER DENYING DEFENDANT SOPHIE TOYA'S
## ORAL MOTION FOR JUDGMENT OF ACQUITTAL (5/8/2024)
## AND MOTION FOR JUDGMENT OF ACQUITTAL OR,
## IN THE ALTERNATIVE, FOR NEW TRIAL (ECF No. 71)

This matter comes before the Court on Defendant Sophie Toya's Oral Motion

for Judgment of Acquittal (5/8/2024) Motion for Judgment of Acquittal, Or, in the

alternative, For a New Trial (ECF No. 71).  A response and reply have been filed.

For the reasons set forth on the record and below, the Motions are denied.

## I.     BACKGROUND

Toya was indicted on September 23, 2020 and charged with: Count 1, Health

Care Fraud, 18 U.S.C. §§ 1347 and 2; Counts 2-6, False Statements Relating to

Health Care Matters, 18 U.S.C. §§ 1035(a) and 2); and Forfeiture Allegations, 18

U.S.C. § 982(a)(7).  (ECF No. 1) Toya was a medical doctor licensed to practice in

Michigan, Illinois and Indiana.  She was a Medicare provider.  Later, she worked  as

an independent contractor for telemedicine companies, including the AffordADoc Network and Integrated Support Plus, Inc. (ECF No. 1, PageID.5-.6)

The jury trial began in this matter on April 23, 2024. On May 10, 2024, the jury rendered its verdict finding Toya guilty on all the charged counts. (ECF No. 66) Toya asserts that the conviction on Count 1 cannot stand because there was a prejudicial variance between the facts charged in the Indictment and the evidence presented at trial in violation of Toya's rights under the Fifth and Sixth Amendments. As to Counts 2 through 6, Toya claims the convictions cannot stand because the evidence presented at trial demonstrated that it was legally impossible for Toya to have committed the charged offenses.

The Government responds that the motion should be denied because there was no material variance between the allegations in the Indictment and the evidence admitted at trial as to Count 1, and the use of undercover agents posing as Medicare patients did not make Defendant's false statements convictions on Counts 2 through 6 "legally impossible."

## II.    ANALYSIS

### A.    Standards of Review for Motions for Under Rules 29 and 33

#### 1.    Rule 29 Motion for Judgment of Acquittal

Toya moves for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure based on insufficient evidence to support a conviction. Rule 29

provides that a court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). To support a motion for judgment of acquittal the court must consider, "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Caseer*, 399 F.3d 828, 839-40 (6th Cir. 2005); *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).   A defendant claiming insufficiency of the evidence bears a heavy burden.   *United States v. Jackson*, 473 F.33d 660, 669 (6th Cir. 2007).   The court is bound to make all reasonable inferences and credibility choices in support of the jury's verdict.   *Id*. at 669-70.   The question is merely one of legal sufficiency; the court does not substitute its judgment for that of the jury, independently weigh the evidence, or judge the credibility of trial witnesses.   *United States v. Ramirez,* 635 F.3d 249, 255-56 (6th Cir. 2011).   There is a strong presumption in favor of sustaining a jury conviction.   *United States v. Peters,* 15 F.3d 540, 544 (6th Cir. 1994).

### 2.    Rule 33 Motion for a New Trial

Alternatively, Toya seeks a new trial under Rule 33.  Rule 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  When faced with a Rule 33 motion, unlike a motion for judgment of acquittal under Rule 29, the

district court may weigh the evidence and assess the credibility of the witnesses—

"[i]t has often been said that [the trial judge] sits as a thirteenth juror" when

considering a Rule 33 motion.  *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir.

1998).  A motion for new trial is premised on the argument that the jury's verdict

was against the manifest weight of the evidence.  *United States v. Hughes*, 505 F.3d

578, 593 (6th Cir. 2007).   Such motions are generally granted only in the

extraordinary circumstance where the evidence preponderates heavily against the

verdict.  *Id.* at 592-93.  In general, motions for a new trial are disfavored and should

be granted with caution. *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991).

A district court's decision to admit or exclude evidence is reviewed for abuse of

discretion and, even if an abuse is found, a new trial is not required unless the

defendant's substantial rights were affected by the admission or exclusion of the

evidence.  *See, United States v. Bonds,* 12 F.3d 540, 554 (6th Cir. 1993); Fed. R.

Crim. P. 52(a).

### B.    Count 1 – Prejudicial Variance

Toya argues that the Indictment laid out a vast web of offshore call centers,

telemedicine companies, durable medical equipment suppliers, and individual

accomplices who all worked together with Toya to defraud Medicare into paying for

unnecessary orthotics.  Instead, Toya claims that the Government at trial presented

evidence of Toya's own actions, a "scheme of her own actions" and not the scheme

4

charged in the Indictment involving "dozens and dozens" of dishonest companies and individual trials. The Government's agent witnesses at trial denied having knowledge of the broad scheme, or even the individuals named in the Indictment as Toya's accomplices. Toya argues that there can be no doubt that this "monumental" variance between the charges in the Indictment and the evidence presented at trial prejudiced Toya.

Toya asserts that had the Government pursued the scheme charged in the Indictment and offered witnesses who had knowledge of how it operated, Toya would have been able to make a distinction through cross-examination of the Government's own witnesses. For example, had the Government called the agents who were actually familiar with the investigation and the "accomplices" who supposedly plotted with Toya to defraud Medicare, she could have elicited exculpatory testimony, such as she did not know, let alone conspire with the architects of the scheme, that the companies and individuals who orchestrated the scheme made every effort to promote it as legitimate, and that they lied to the participating physicians, including Toya, to hide the fraud. By not presenting this evidence, Toya claims the Government "pulled the rug out" from under her defense and significantly compromised her ability to blame the true culprits.

The evidence the Government presented to the jury, Toya claims, instead tried to prove that Toya was a "bad" doctor guilty of exercising poor medical

judgment.  The Government focused on how Toya did not spend time with the patients, did not verify their medical histories or consider or offer alternative treatment options.  Toya claims the Government misdirected the jury's focus onto Toya herself which blunted the Government's need to prove that Toya knowingly and willingly participated with her alleged accomplices in an elaborate international Medicare fraud scheme as charged in the Indictment.  Because of the misdirection, the defense was unable to formulate an appropriate defense strategy.  Toya argues she could have bolstered her medical decisions through presentation of expert testimony and other standard of care-based evidence.  The evidence presented a scheme of one, rather than the charged international fraudster in a scheme with dozens of others, Toya claims the Government eviscerated the fundamental fairness of the trial.  Toya was not given adequate notice of her alleged misconduct and was irreparably prejudiced in her ability to defend herself against a case she did not see coming.

In response, the Government asserts it offered substantial evidence, including witness testimony and documentary evidence which conformed to the scheme charged in Count 1 and that no variance occurred.  The Government indicated that paragraphs 25 through 34 of Count 1 of the Indictment described the manner and means by which Toya accomplished her scheme.  (ECF No. 1)  The Government cited each paragraph and noted the witness testimony and documentary evidence

presented at trial to support each of the alleged manner and means.  (ECF No. 72, PageID.1605-.1612)

The Government alleged in the Indictment in ¶ 26 that Toya agreed with others at the AffordADoc Network and Integrated to write brace orders for Medicare beneficiaries in exchange for $25 or $30 per patient consultation.  At trial, the Government presented Toya's emails showing that she began working with the named telemedicine companies, that she accessed patient information via online portals provided by the companies and that Toya was instructed to sign and generate brace prescriptions.  *Id*., PageID.1605.  Other evidence included Toya agreeing with the staffing company used by Integrated that she would be paid $25 per consult and that Toya desired to increase her volume of daily assignments.  *Id*., PageID.1606.  Recorded calls were presented where AffordADoc transferred patients to Toya so that she could prescribe braces for them.  *Id*.  The Government presented at trial Medicare claims data and testimony about AffordADoc's process.  The Government asserts that the evidence presented supports Toya's dealings with Integrated and AffordADoc.  The evidence showed that Toya participated in a scheme with others to defraud Medicare.

In ¶ 27 of the Indictment, the Government alleged that Toya gained access to Medicare beneficiary information for Medicare beneficiaries from the AffordADoc Network, Integrated, and other purported telemedicine companies in order for Toya

to sign brace orders.  The Government claims that at trial, the evidence demonstrated that Toya prescribed 7,911 orthotics for 2,651 Medicare beneficiaries in six months. Toya accessed this information from Integrated and AffordADoc with pre-populated brace prescriptions and medical records for the Medicare beneficiaries.  The Government asserts that Integrated's orientation materials submitted at trial and testimony regarding AffordADoc's procedures showed that Toya had access to Medicare beneficiary information which allowed Toya to approve each brace prescription by merely clicking boxes and electronically signing the order.  *Id.,* PageID.1607.

The Indictment in ¶¶ 28-29 alleged that neither Toya, nor AffordADoc nor Integrated billed Medicare for telemedicine consultations, but instead AffordADoc, Integrated and others solicited illegal kickbacks and bribes from brace suppliers in exchange for brace orders signed by Toya and others.  AffordADoc and Integrated directed Toya to issue brace orders, which were then forwarded to the brace suppliers for fulfillment.  It was the brace suppliers who submitted the claims to Medicare based on the orders signed by Toya.  The Government presented testimony that out of the 2,651 Medicare beneficiaries to whom Toya prescribed orthotic braces, Toya did not submit any Medicare Part B claims for physician services, except for one patient*. Id*., PageID.1607-08.  The absence of Part B claims for physician services the Government claims shows that Toya had no doctor-patient relationship with the

8

beneficiaries, but went on to prescribe braces even though she did not treat the patients. *Id*., PageID.1608. There was further testimony that the brace supply companies submitted the claims to Medicare and that Toya knew from her orientation with Integrated that the prescriptions she signed were not provided to the patients but were "automatically returned to the Medical Marketer to supply the approved device." *Id*. There was evidence at trial that Toya could prescribe only the specific brace code selected by the call center and that Toya could not prescribe an orthotic that was not requested in the patient's intake chart. *Id*.

Paragraph ¶ 30 of the Indictment alleged that owners and operators of AffordADoc and Integrated paid Toya and others to sign brace orders, caused the submission of claims for braces that were medically unnecessary and not eligible for reimbursement from Medicare, to increase revenue for themselves and their co-conspirators. The Government presented testimony that showed the braces prescribed by Toya were medically unnecessary and were not eligible for reimbursement. *Id*., PageID.1609. Testimony was presented that Medicare required proof of treatment by Toya, but that Toya did not do so. Evidence that Toya was paid $120,474 in just six months, and that Toya prescribed braces billed to Medicare for $6.3 million, while working for AffordADoc and Integrated, established, according to the Government, that her efforts enriched herself, the telemedicine companies and the brace suppliers. *Id*.

9

The Indictment in ¶31 alleged that Toya ordered braces that were medically unnecessary for patients with whom she lacked a pre-existing doctor-patient relationship, without physical examination and based on a short telephonic conversation with the patient or without any conversation at all. The Government states that Toya had no doctor-patient relationship with the patients, as noted previously. Claims data presented at trial the Government argues established that Toya routinely prescribed multiple braces, with an average of three orthotics per beneficiary. *Id.* Records revealed that Toya did not consider any other treatment options other than the braces and that testimony from patients showed that Toya did not examine any patient. Phone records presented at trial established that Toya prescribed braces to patients without speaking to them or speaking only briefly by phone. *Id.*, PageID.1610.

The Indictment further alleged in ¶¶ 32 and 33 that Toya and others falsified, fabricated, altered brace orders and other records to support claims to Medicare for braces that were obtained through illegal kickbacks and bribes. The Indictment also alleged that Toya and others concealed and disguised the scheme by preparing false and fraudulent documentation to Medicare. It alleged that Toya falsely determined, through her interactions with Medicare beneficiaries, that the prescription braces was reasonable and medically necessary. The Indictment further alleged that Toya falsely documented that she provided the beneficiary with information regarding

follow-up medical treatment and counseled the beneficiary to consult with a pain management physician.  It also alleged that Toya falsely attested that the information in the medical record was true and accurate and falsely diagnosed the beneficiary with certain conditions to support the prescription of certain braces.  In addition, the Indictment alleged that Toya concealed the fact that her interaction with the beneficiary was brief and telephonic, and that she did not perform certain diagnostic tests prior to ordering braces.

As noted previously, the Government claims the evidence at trial demonstrated that the brace prescriptions and medical records Toya signed were false.  Toya was not the patients' treating physician, nor did she perform consultations and examinations of the patients. According to the Government, evidence at trial further showed that Toya had no contact with the patients, other than perhaps quick phone calls, and that she did not make any medical necessity determinations.  The evidence at trial showed that the prescriptions were not provided to the patients, but were returned to the marketers after Toya signed the documents.

The final paragraph in the Indictment describing the scheme, ¶ 34, alleged that Toya and others submitted and caused the submission of false and fraudulent claims to Medicare in excess of approximately $6.3 million for bracers that were procured through the payment of kickbacks and bribes, medically unnecessary, ineligible for

11

Medicare reimbursement, for which Medicare paid approximate $3.5 million.  The Government cited claims data evidence presented at trial that showed Toya's brace prescriptions caused Medicare to be billed more than $6.3 million, for which it paid more than $3.6 million.

The Government argues that based on the language charged in the Indictment as to the scheme involved, it has shown that the evidence presented at trial supported the alleged scheme and no variance occurred.  The Government claims the evidence presented at trial showed that Toya schemed with others–AffordADoc and Integrated, and their employees and agents,  planned and took action to submit false claims to Medicare.

In Count 1, Toya was charged with knowingly and willfully executing, or attempting to  execute, a scheme or artifice—(1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program.  18 U.S.C.A. § 1347.  A "scheme to defraud" includes any plan or course of action by which someone intends to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises.  Sixth Circuit Pattern Instruction 10.05.

A modification to an indictment may take one of two forms:  an amendment or a variance.  *United States v. Beasley,* 583 F.3d 384, 389 (6th Cir. 2009).  "A

constructive amendment 'results when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which modify essential elements of the offense charged such that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment.'" *United States v. Kuehne*, 547 F.3d 667, 683 (6th Cir. 2008) (citation omitted). A constructive amendment is per se prejudicial because the defendant will have been convicted of a crime with which he was never charged. In contrast, a variance "occurs when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *Ibid*. (alteration in original) (citation omitted). A reversal of a conviction based on a variance "is warranted only where a defendant proves that (1) a variance occurred and (2) that the variance affected a substantial right." *Ibid*.; *United States v. Ashrafkhan*, Case No. 17-1918, 821 F. App'x 428, 439–40 (6th Cir. Jul. 10, 2020).   A defendant's substantial rights are affected "only when the defendant shows prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions." *Kuhne,* 547 F.3d at 683.

The Government tracked the specific language in the Indictment as to the scheme alleged with the evidence presented at trial that it argues supported what was charged in the Indictment.   The Court finds that the evidence presented at trial

conformed with the charged allegations of a scheme involving Toya and others.  The Indictment did not contain language that the scheme involved was international and involved dozens of firms, as argued by Toya.  The Indictment specifically identified AffordADoc and Integrated, along with their staff, which the evidence established were involved in the scheme.  Evidence at trial showed that Toya accessed patient information provided by the companies involved and that Toya was instructed to sign and generate brace prescriptions.  Toya was paid for the consultation with the patients, which were brief.  The recorded conversations presented at trial supported the Government's allegation that Toya did not examine, nor treat the patients, nor provide any follow up information to the patients.  The evidence at trial showed that Toya did not provide the brace prescriptions to the patients themselves, but rather the forms were returned to the company, who in turn provided the prescriptions to the brace companies, who later submitted the claims to Medicare.  Other than one patient, Toya did not submit any claims to Medicare for provider reimbursement under Part B.  The training documents provided to Toya supported the scheme involved and how the process worked. The evidence showed that Toya participated in the scheme, and that she even requested to make more calls.  Sufficient evidence was presented which showed that Toya merely checked the boxes on the forms provided to her as to the type of braces to be ordered for the patient and eventually submitted by the brace companies to Medicare.

Toya argues that variance occurred because she had to defend, not a broader international scheme, but a smaller scheme involving herself, citing *United States v. Mize*, 814 F.3d 401, 409–10 (6th Cir. 2016).  *Mize* is distinguishable in that the Sixth Circuit found the case established two conspiracies, not just the one charged in the indictment, and that the government introduced significantly more evidence than it should have in a separate conspiracy apart from the conspiracy at issue in *Mize*.  *Id*. at 411. The Sixth Circuit found a variance because of the evidence of the separate conspiracy.  The Sixth Circuit further found that prejudice existed because the defendants in *Mize* were forced to defend against a totally separate conspiracy apart from the conspiracy these defendants were charged with under the indictment.  The Sixth Circuit stated that evidence from a different scheme to portray the defendants in the *Mize* case placed the *Mize* defendants in a  grossly prejudicial light before the jury.  Id. at 411-12.

In this case, the Court finds there was no variance in that the alleged scheme in this Indictment and the evidence presented at trial involved the same scheme, and not another scheme where Toya was not involved.  There is also no prejudice in this case because there was no spillover evidence from another scheme presented in this trial which placed Toya in a prejudicial light before the jury.  Even if the evidence presented at trial was narrower than the alleged scheme in the Indictment, the Sixth Circuit has held that "if the evidence offered at trial proves a narrower scheme than

15

the one alleged in the indictment, then the variance is not fatal." *United States v. Weinstock*, 153 F.3d 272, 279 (6th Cir. 1998).

Toya's conviction as to Count 1 will not be set aside. After reviewing the evidence in the light most favorable to the prosecution, the Court finds Toya has not met her burden for a judgment of acquittal nor for a new trial. The Court finds that a rational trier of fact could have found the essential elements of Medicare Fraud in Count 1 as alleged in the Indictment beyond a reasonable doubt and that the jury's verdict was not against the manifest weight of the evidence.

### C.    Counts 2 through 6 – Legally Impossible

Toya argues that the conviction as to Counts 2 through 6 cannot stand based on the doctrine of legal impossibility. The Government responds that the doctrine does not apply in this case.

The doctrine of legal impossibility prohibits a defendant from being convicted for an act that does not amount to a crime, even if the defendant intended to commit a crime in undertaking that act. *See United States v. Peete*, 919 F.2d 1168, 1176 (6th Cir. 1990) ("Legal impossibility is commonly defined as the case in which the defendant did everything, he intended to do but yet had not committed the completed crime."). Toya argues the doctrine of legal impossibility applies in this case as to Counts 2 through 6 because she could not have been convicted pursuant to the jury instructions given by the Court.

16

The Court gave the following jury instruction as to Counts 2 to 6 which was agreed to by the parties:

> For you to find the defendant guilty of false statements relating to healthcare matters, you must find that the government has proved each and every one of the following elements beyond a reasonable doubt:
>
> First, that the defendant, 1, falsified, concealed or covered up by any trick, scheme or device a material fact; or, 2, made any materially false, fictitious or fraudulent statements or representations or made or used any materially false writing or document knowing the same to contain any materially false, fictitious or fraudulent statement or entry.
>
> Second, that the defendant did so in connection with the delivery of or payment for any healthcare benefits, items or services involving a healthcare benefit program.
>
> And, third, that the defendant did so knowingly and willfully.

(ECF No. 63, PageID.1506)

The portion of the instruction Toya claims has not been met is the second element which states that the defendant did so "in connection with the delivery of or payment for any healthcare benefits, items or services involving a healthcare benefit program." (ECF No. 71, PageID.1595) Toya notes that she was not charged with either conspiracy or attempt in connection with her prescribing activity. She was charged in Counts 2 through 6 with the substantive offense of making false statements based exclusively on the work of undercover agents who repeatedly lied to Toya and her accomplices. Toya claims that one of the key lies the agents told was that they were Medicare beneficiaries, but they were not. Toya further claims

17

that because none of the prescriptions ordered by Toya in the five false statement courts were objectively connected to any healthcare benefit program in the real world since none of the so-called patients were in fact Medicare beneficiaries. Without an actual Medicare beneficiary, Toya argues there was no offense and that she should be acquitted of those charges.

The Government responds that Toya's convictions on Counts 2 through 6 should stand because even though her false statements related to her interactions with undercover agents posing as Medicare patients, no element of the offense required the patients to be "real" Medicare patients. Although the federal agents who testified did not have Medicare coverage themselves, the Government asserts that the fictitious identities they assumed during the undercover operation had real Medicare identification numbers that could be, and were, used to bill Medicare for covered items. The Government further asserts that Toya's interactions with Teresa Fleisher, Gina Picarelli, Kira Carlo, Priscilla Ceron and Paul Reno resulted in Toya ordering brace prescriptions that were signed by Toya containing numerous false statements. These prescriptions were then used by the medical supply companies to bill Medicare for the braces prescribed by Toya. The Government asserts that the evidence at trial showed that based on Toya's signed orders, Medicare paid: $1,213.45 for the braces ordered for Teresa Fleisher; $2,059.63 for the braces ordered for Gina Picarelli; $2,042.89 for the braces ordered for Kira Carlo;

$2,419.47 for the braces ordered for Priscilla Ceron; and $1,891.83 for the braces ordered for Paul Reno.  (ECF No. 72, PageID.1615-.1616)  Three of the braces ordered were shipped to Fleisher, Carlo and Reno.  *Id*., PageID.1616.  The Government claims it presented at trial evidence that for these five patients the medical records and prescriptions identified their insurance carrier as "Medicare" with their unique Medicare identification number.  *Id*.  The Government argues that the evidence at trial sufficiently supports convictions of the five false statement charges because Toya made false statements regarding the prescriptions for each patient with the Medicare unique identification number, that based on these prescriptions, the medical supply companies billed Medicare for the braces and Medicare paid for the braces for all five patients.  The Government states that Toya's false statements in the orders were in connection with the delivery of or payment for healthcare benefits or items involving a healthcare benefit, which meets the elements the Government is required to prove in Counts 2 through 6.

In reviewing the pertinent jury instructions and the evidence submitted at trial, the Court finds that the undercover agents, although not actual Medicare patients, did have unique Medicare numbers, which were used by Toya to order prescriptions for braces which the medical supplier in turn used to bill Medicare.  Medicare paid for the braces based on the submission of the prescriptions signed by Toya.  The jury instructions did not require the patients to be actual beneficiaries.  The second

19

element at issue only requires Toya, to make false statements "in connection with the delivery of or payment for any healthcare benefits, items or services involving a healthcare benefit program."  The prescriptions ordered and signed for by Toya as to these five patients, were in fact delivered to Medicare and paid for by Medicare. Toya's actions met the second element of the jury instructions, and her argument of legal impossibility cannot stand.  There is no requirement that the patients must be real Medicare patients, only that Toya's false statements were in connection with the submission of the prescription order to Medicare for payment by Medicare.

Toya in her brief admits that the doctrine of legal impossibility has limited application but cited two cases in support of her argument that legal impossibility applies in this case.  The two cases cited by Toya are distinguishable.

In *United States v. Hixon*, 987 F.2d 1261 (6th Cir. 1993), a defendant was charged for making false and material statement in violation of 18 U.S.C. § 1001 in connection with claims for disability compensation.  The government alleged that the defendant made a false statement on his application by stating that he was not self-employed when in fact he was the sole shareholder of the company which the government claimed made defendant self-employed.  However, the Sixth Circuit held that defendant could not be convicted of false and material statement because the company was a separate entity from defendant.  Defendant was employed by the company he owned and was not in fact self-employed.  In the instant case, Toya does

20

not challenge that she made false statements on the medical records and in the prescription order for braces, but only challenges the second element noted above that she could not have made false statements in connection with the submission of the prescription order to Medicare for payment by Medicare because the patients were not real Medicare patients. *Hixon* therefore is not appliable.

In *United States v. Monasterski*, 567 F.2d 677 (6th Cir. 1977), a defendant was convicted of possessing goods stolen from an interstate shipment, but the Sixth Circuit reversed the conviction holding that the defendant could not be convicted of receiving stolen goods when actual physical possession of the goods had been recovered by the owner before the goods were delivered to the non-owner. Here, the evidence showed that Toya made false statements in the patients' medical records and in signing the prescriptions. The prescriptions were filled by the medical supply company which claims were then submitted to Medicare for reimbursement and were paid for by Medicare. *Monasterski* is inapplicable since there is no challenge as to the meaning of any of the terms in the second element identified by Toya. Toya only argues that the facts at trial did not meet the second element, which as this Court noted above, had been met. The Court finds Toya has not met her burden for a judgment of acquittal nor for a new trial. The Court finds that a rational trier of fact could have found the essential elements of False Statements Relating to Health Care Matters alleged in Counts 2 through 6 of the Indictment beyond a

21

reasonable doubt.  The jury's verdict was not against the manifest weight of the evidence.

### III.    CONCLUSION/ORDER

For the reasons set forth above,

IT IS ORDERED that the Oral Motion for Judgment of Acquittal **(5/8/2024)** is **DENIED**.

IT IS FURTHER ORDERED that the Motion for Judgment of Acquittal Or, in the Alternative, for a New Trial **(ECF No. 71)** is **DENIED**.

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

DATED:  July 2, 2025